IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| JOSHUA T. SYLVESTER; and CITY | ) | |
| OF KENOSHA. | ) | |
| | ) | |
| Defendants. | ) | *Plaintiff Demands a Jury Trial* |

## COMPLAINT AT LAW

**NOW COMES** the Plaintiff JANE DOE, by her attorneys, Keenan J. Saulter of Saulter Law P.C., and Craig M. Sandberg of Sandberg Law P.C., and for her Complaint at Law states as follows:

## I. OVERVIEW

1.     This action arises out of an incident—a horrific and vile hours-long period of multiple sexual assaults of a profoundly intoxicated and impaired JANE DOE, on August 18, 2022, in an examination room of the emergency department at Aurora Medical Center Kenosha (10400 75th Street, Kenosha, Wisconsin 53142) at the hands of Kenosha Police Department officer JOSHUA T. SYLVESTER.

2.     JOSHUA T. SYLVESTER—who at the time was employed and working as a law enforcement officer by the CITY OF KENOSHA—repeatedly and graphically sexually assaulted JANE DOE, whom he knew was intoxicated and in-

and-out of consciousness such that she was unable to consent[1] or otherwise stop the horrific and vile sexual assault.

3.      As a result of this incident, JANE DOE was and remains psychologically, emotionally, and mentally traumatized by the conduct imposed upon her while in the custody, care, and control of the defendants.

## II. Parties

### A.      Plaintiff.

4.      JANE DOE (F-24) was a resident of the Eastern District of Wisconsin, at the time of the incident (and remains a resident of this District as of the filing of this action).

### B.      Defendants.

5.      At all relevant times herein, JOSHUA T. SYLVESTER ("SYLVESTER") (M-27) was sworn City of Kenosha Police Department ("KPD") officer residing in this judicial district, who possessed the authority under law to carry out the police powers invested in him by the CITY OF KENOSHA and the State of Illinois, including the power to arrest. At all times relevant herein, SYLVESTER was a probationary officer who was with the KPD just over a year. At all times relevant herein, SYLVESTER was married and had in infant child.

6.      At all relevant times herein, CITY OF KENOSHA ("the CITY") was a municipal corporation, duly chartered and organized under the laws of the State of

---

[1] Wis. Stat. § 940.225(4) defines "consent" as "words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact."

Wisconsin. The City's principal place of business is located at City Hall, 625 52nd Street, Kenosha, Wisconsin 53140.

7.     For purposes of this Complaint, the CITY and SYLVESTER will be referred to collectively as "the CITY Defendants."

8.     At the time of the alleged incident and at all times pertinent hereto, the CITY OF KENOSHA and SYLVESTER acted under color of law, of a statute, ordinance, regulation, custom, or usage.

### III. JURISDICTION

9.      The court has jurisdiction over the lawsuit because the action arises under 28 U.S.C. §§ 1331 and 1343, as they arise under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. The court has supplemental jurisdiction over the lawsuit under 28 U.S.C. § 1367 over the plaintiff's state law claims because the plaintiff's claims are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### IV. VENUE

10.     Venue is appropriate in the Eastern District of Wisconsin pursuant to 28 USC § 1391(b), as all of the events complained of occurred in Kenosha County, located in this district.

### V. VICARIOUS LIABILITY

11.     Whenever in this complaint it is alleged that a defendant did any act or thing, it is meant that the defendant's agents, officers, servants, borrowed

3

servants, employees or representatives did such act or thing and that the time such act or thing was done, it was done with the full authorization or ratification of defendant or was done in the normal and routine course and scope of employment of defendant's officers, agents, servants, borrowed servants, employees or representatives. The principal is vicariously liable for the acts of the agent because of an employer employee status, agency by estoppel, ostensible agency or borrowed servant doctrine.

## V. INDEMNIFICATION

12.      Given this action is brought against SYLVESTER as an employee of the CITY OF KENOSHA because of acts he committed while carrying out duties as an employee while acting within the scope of his employment, under WIS. STAT. § 895.46, any judgment as to damages and costs entered against the employee in excess of any insurance applicable to the employee shall be paid by the CITY OF KENOSHA.

13.      At all times relevant herein, SYLVESTER was an employee of the CITY OF KENOSHA, wore his official KPD police uniform, carried his department-issued firearm, and, at various times on the date of the incident, operated the CITY'S police squad vehicle.

14.      At all times relevant herein, SYLVESTER acted within the scope of his employment when committing the actions and omissions detailed herein.

## VI. FACTS

15.     On August 17, 2022, prior to 11:00pm, JANE DOE drank approximately four (4) White Claw® Hard Seltzer Surge alcoholic beverages.

16.     At approximately 11:00pm, JANE DOE went to Rivals Sports Pub and Grille, which is located at 6325 120th Ave, Kenosha, Wisconsin 53142.

17.     Thereafter, she sat down, had a double shot of vodka, and blacked out; she does not remember if she had more drinks or paid for her bar tab or leaving the bar.

18.     Shortly before midnight on August 18th, JANE DOE was involved in a one-car traffic accident in which she struck a tree in the White Caps neighborhood of Kenosha, Wisconsin; the next think JANE DOE remembers is being in a hospital room with a male police officer.

19.     The CITY dispatched KPD officer JOSHUA SYLVESTER to the scene of the crash.

20.     SYLVESTER arrived on scene and observed the vehicle's airbags deployed and found JANE DOE breathing, but unconscious.

21.     SYLVESTER spoke with JANE DOE who said that she did not know where she was or what had happened but, she did say that she was coming from a bar.

22.     Thereafter, JANE DOE was taken into custody of the CITY OF KENOSHA and transported, via Kenosha Fire Department ambulance, to Aurora

5

Medical Center Kenosha ("AMCK"), which is located at 10400 75th Street, Kenosha, Wisconsin 53142.

23.    On August 18, 2022, at approximately 12:33am, JANE DOE arrived at AMCK.

24.    Upon her arrival, AMCK permitted one or more law enforcement agents inside its patient care areas.

25.    JANE DOE was, then, placed in a closed room (Exam Room 13) within the AMCK's emergency department with SYLVESTER.

26.    Shortly after her arrival in the emergency department, ER staff removed JANE DOE'S clothing; except for the gown, JANE DOE was completely nude.

27.    At approximately 12:40am, JANE DOE was seen in the ER by emergency department staff attending physician (Dr. Michael P. Jones) who performed a physical examination of DOE and found she was alert and oriented x3, but admits to heavy alcohol use; she had no recall of the details of the crash.

28.    At the time, DOE was agitated and calling for her father; no called her father.

29.    Dr. Jones recommended CT imaging of DOE'S head, cervical spine and chest, and abdomen/pelvis, as well as blood tests.

30.    JANE DOE, due to her profound intoxication lacked decision-making capacity to make medical decisions or otherwise provide informed consent to

undergo any medical tests or procedures, refused to consent to Dr. Jones's recommend medical tests.

31.     Based on her apparent level of intoxication, Dr. Jones decided to hold her for a longer (4-hour) observation period for reevaluation to be sure that she was medically stable.

32.     SYLVESTER told Dr. Jones that JANE DOE was going to be in custody after she had been medically cleared.

33.     At approximately 1:32am, Dr. Jones talked to JANE DOE, who had no recollection of the preceding night, denied pain and declined any testing at that time.

34.     At approximately 1:57am, SYLVESTER carried on conversation with JANE DOE with no audio recording on his body camera.

35.     At approximately 1:58a, JANE DOE adjusted her blanket exposing her left leg while lying on the bed talking to Sylvester; JANE DOE fondled her own breasts over her clothes while talking to SYLVESTER.

36.     At approximately 1:59am, JANE DOE laughed at something said by SYLVESTER and lifted her hospital gown, thus, further exposing her left leg all the way up to her crotch.

37.     At approximately 2:01am, JANE DOE adjusted her hospital gown, thus, exposing her crotch and stomach to SYLVESTER.

38.     At approximately 2:03am, medical staff entered the room to check a machine and, then, exited.

39.     At approximately 2:04am, JANE DOE sat up at on the hospital bed and talked to SYLVESTER from a seated position.

40.     Between 2:07am – 2:55am, SYLVESTER was positioned near the hospital room door while JANE DOE sat on the bed, apparently having a conversation.

41.     At approximately 2:55am, SYLVESTER reached into JANE DOE'S purse and obtained her iPhone.

42.     At approximately 2:56am, SYLVESTER sat down in a chair facing JANE DOE; SYLVESTER'S hands entered view of his body camera and he was no longer wearing the wedding band that he was wearing earlier; SYLVESTER bounced his legs and appeared to nervously fidget with his hands.

43.     At approximately 2:57am, Sylvester picked up JANE DOE'S phone and was manipulating her phone with her right hand.

44.     Between 2:58am – 3:01am, SYLVESTER manipulated JANE DOE'S phone in plain view of the camera and begins to add himself as a contact in JANE DOE'S phone under the name "Officer Josh"; SYLVESTER viewed JANE DOE'S camera roll and scrolled for a few minutes looking at her photos.

45.     Between 3:01am – 3:03am, SYLVESTER looked outside the sidelight window by the door and then stood outside the room entrance for a moment.

46.     At approximately 3:05am, SYLVESTER showed JANE DOE the screen of his phone with his PSB ID Badge visible on the back of the phone; JANE DOE smiled and laughed after viewing what he showed her on his phone.

8

47. At approximately 3:08am, SYLVESTER looked at JANE DOE'S phone, again, while sitting in a chair facing her; SYLVESTER showed JANE DOE the screen on her phone it appeared the photo thumbnails were not loading; it appeared she encourage SYLVESTER to look at her photos.

48. At approximately 3:10am, JANE DOE laid down on her back but kept her feet flat on the bed and her knees up (effectively) exposing her vagina and buttocks to SYLVESTER.

49. At approximately 3:11am, SYLVESTER got up from the chair and checked the sidelight window.

50. Between 3:12am – 3:16am, SYLVESTER pulled up a photo on JANE DOE'S phone scrolling through her photos.

51. At approximately 3:16am, SYLVESTER pulled up a photo on JANE DOE'S phone and it was a picture of a naked female consistent with JANE DOE, but her face was not visible in the picture.

52. At approximately 3:17am, SYLVESTER selected photos from the camera roll and appeared to send them to himself at the "Office Josh" contact he saved in JANE DOE'S earlier that morning.

53. While SYLVESTER did this, JANE DOE was lying on her back with her arms above her head, her hospital gown pulled above her waist, moving her legs around in a manner that appeared designed to elicit a sexual response.

54. At approximately 3:17am, after SYLVESTER sent himself the photos from JANE DOE'S phone and then he deleted the text thread on JANE DOE'S

9

phone; SYLVESTER took out his phone and for a moment on camera held his phone in his left hand and JANE DOE'S phone in his right hand.

55.     At approximately 3:22am, SYLVESTER stood at the side of JANE DOE'S bed as she had her gown pulled even higher exposing her body below the waist.

56.     Between 3:23am – 3:25am, SYLVESTER used his left hand to cover his body camera and his right hand was, then, placed over his left hand; SYLVESTER moved throughout the room with the camera covered.

57.     At approximately 3:25am, SYLVESTER took his right hand off his left hand and reached down toward JANE DOE, but JANE DOE face was visible despite SYLVESTER'S attempt to cover the camera; SYLVESTER'S hand was extended toward JANE DOE'S vaginal area and JANE DOE'S left hand visible above her head.

58.     At approximately 3:26am, SYLVESTER returned his right hand over his left hand, which was still attempting to cover the body camera.

59.     SYLVESTER moved around the room some more and, then, he returned to JANE DOE (again) and extended his right hand down toward JANE DOE; in this instance, there was actually a brief moment in the body camera video where his finger was visibly touching JANE DOE on what appeared to be her pubic mound; SYLVESTER'S arm visibly thrusted back and forth while extended down toward JANE DOE.

10

60.     When SYLVESTER returned his right hand, there appeared to be vaginal secretions on his right hand that he wiped onto his left hand; the secretions visible on his hands until he wiped it off on a hospital linen; immediately thereafter, SYLVESTER'S body camera captured JANE DOE in a position with her legs spread open as she was laying on the hospital bed.

61.     Between 3:27am – 3:28am, SYLVESTER stood positioned by door and appeared to be having conversation with JANE DOE.

62.     Between 3:38am – 3:40am, SYLVESTER moved toward JANE DOE and, then, used his hand to cover the body camera; the camera remained covered, but when SYLVESTER moved his hand out of the way, JANE DOE was sitting with her legs spread apart (again).

63.     At one point, during these repeated sexual assaults, SYLVESTER walked up to the bed that she was lying in, pulled out his penis, and asked if she wanted to touch it.

64.     At approximately 3:41am, hospital staff entered the room to check on JANE DOE for a moment and, then, exited.

65.     Around this time, Dr. Jones talked to JANE DOE who denied any crash-related pain and refused a chest x-ray.

66.     Between 3:41am – 4:05am, SYLVESTER looked at the photos on JANE DOES'S phone and sat on a chair facing her.

67.     At approximately 4:08am, DOE was discharged from AMCK into the exclusive custody of SYLVESTER and the CITY.

68.     At approximately 4:11am, SYLVESTER exited the hospital and escorted JANE DOE to his squad car where officer Jasmine Sanders assisted.

69.     On August 18, 2022 before 4:55am, a judge approved a search warrant for JANE DOE'S blood.

70.     At 4:55am, a phlebotomist obtained a sample of blood consisting of two (2) tubes extracted from JANE DOE.

71.     According to the County of Kenosha Blood Alcohol Analysis Report (dated 09/26/2022), JANE DOE had a BAC level of 0.242 g/100mL +/- 0.014 g/100mL (% weight/volume) of ethanol.

72.     At all times relevant herein, due to her intoxication, JANE DOE was incapable of consenting to any sexual activity in the ER exam room with SYLVESTER.

73.     At all times relevant herein, due to his position of power of her following her arrest and the inherently coercive custodial relationship between SYLVESTER and JANE DOE, JANE DOE could never have knowingly and voluntarily consented to any sexual activity in the ER exam room with SYLVESTER.

74.     During the aforementioned time-period, JANE DOE was consistently losing and regaining consciousness and was too intoxicated and injured to protect herself.

75.     Following his sexual assault of JANE DOE at the hospital and upon his return home from his shift, SYLVESTER asked his wife to wash his uniform.

76.     JANE DOE was not aware of what had occurred at the hospital until later in the day when she saw a text on her iPad indicating a text had been sent to SYLVESTER'S phone.

77.     On August 19, 2022, JANE DOE'S father took her to the Kenosha Public Safety Building to make a report about what she recalled the officer doing to her at the hospital.

78.     Because of the nature of the allegations, the investigation into SYLVESTER'S sexual assault of JANE DOE was turned over to the Kenosha County Sheriff's Department.

79.     On August 22, 2022, the Kenosha County Sheriff's Department, including KSD Detectives Timothy Hackbarth and Justin McCoy, executed a search warrant at SYLVESTER'S residence.

80.     Det. McCoy began explaining to SYLVESTER why the KSD was there.

81.     Without any solicitation, SYLVESTER stated, "Is this about that girl? My body camera was on the whole time."

82.     SYLVESTER, then, proceeded to make multiple false statements to the detectives' investigation his sexual assault of JANE DOE.

83.     Thereafter, SYLVESTER was placed under arrest for (1) second degree sexual assault by a law enforcement officer and (2) misconduct in public office.

84.     On August 23, 2022, SYLVESTER was charged, via criminal complaint (DA Case No. 2022KN003979), with second degree sexual assault by a law

13

enforcement officer, in violation of WIS. STAT. § 940.225(2)(k), and misconduct in public office, in violation of WIS. STAT. § 946.12(2).

85. On August 23, 2022, SYLVESTER was fired by the CITY of KENOSHA.

86. That at all times relevant herein, JANE DOE was in the exercise of due care and caution for her safety and well-being.

### Count 1 – Fourth Amendment Violation
### (JANE DOE V. JOSHUA T. SYLVESTER)

87. Plaintiff repeats, realleges, and incorporates paragraphs one (1) through eighty-six (86) with the same force and effect as though fully set forth herein.

88. The Fourth Amendment prevents the government from unlawful seizure of a person. U.S. CONST. amend. IV.

89. On August 18, 2022 and at all times relevant, Plaintiff JANE DOE had a right to privacy under the Fourth Amendment of the United States Constitution.

90. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER acted in his official capacity and under the color of law.

91. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Fourth Amendment of the United States Constitution by capturing and retaining nude videos and photographs of Plaintiff JANE DOE on his personal cellular device.

92.     On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Fourth Amendment of the United States Constitution by publishing nude videos and photographs of Plaintiff JANE DOE.

93.     On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Fourth Amendment of the United States Constitution by disseminating nude videos and photographs of Plaintiff JANE DOE.

94.     As a proximate cause of said Constitutional violation, the Plaintiff, JANE DOE, suffered and continues to suffer injury, including but not limited emotional distress, public embarrassment, and reputational harm.

**WHEREFORE** Plaintiff, JANE DOE, respectfully prays for judgement in her favor and against the Defendant JOSHUA T. SYLVESTER in an amount in excess of $75,000 that will fairly and adequately compensate the Plaintiff for compensatory injuries and damages sustained, for punitive damages, for attorney's fees, and for costs of suit.

## Count 2 – Eighth Amendment Violation
### (Jane Doe v. Joshua T. Sylvester)

95.     Plaintiff repeats, realleges, and incorporates paragraphs one (1) through eighty-six (86) with the same force and effect as though fully set forth herein.

96.     On August 18, 2022 and at all times relevant, Plaintiff JANE DOE had a right to be free of cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

15

97. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER acted in his official capacity and under the color of law.

98. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Eighth Amendment of the United States Constitution by capturing and retaining nude videos and photographs of Plaintiff JANE DOE on his personal cellular device.

99. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Eighth Amendment of the United States Constitution by publishing nude videos and photographs of Plaintiff JANE DOE.

100. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Eighth Amendment of the United States Constitution by disseminating nude videos and photographs of Plaintiff JANE DOE.

101. As a proximate cause of said Constitutional violation, the Plaintiff, JANE DOE, suffered and continues to suffer injury, including but not limited emotional distress, public embarrassment, and reputational harm.

**WHEREFORE** Plaintiff, JANE DOE, respectfully prays for judgement in her favor and against the Defendant JOSHUA T. SYLVESTER in an amount in excess of $75,000 that will fairly and adequately compensate the Plaintiff for compensatory injuries and damages sustained, for punitive damages, for attorney's fees, and for costs of suit.

16

## Count 3 – Fourteenth Amendment Violation
### (Jane Doe v. Joshua T. Sylvester)

102.    Plaintiff repeats, realleges, and incorporates paragraphs one (1) through eighty-six (86) with the same force and effect as though fully set forth herein.

103.    On August 18, 2022 and at all times relevant, Plaintiff JANE DOE had a right to be free from discrimination on the basis of sex under the Fourteenth Amendment of the United States Constitution.

104.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER acted in his official capacity and under the color of law.

105.    On August 18, 2022 and at all times relevant, Plaintiff JANE DOE was a female.

106.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Fourteenth Amendment of the United States Constitution by capturing and retaining nude videos and photographs of Plaintiff JANE DOE on his personal cellular device.

107.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER captured nude videos and photographs of Plaintiff JANE DOE because she was a female.

108.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Fourteenth Amendment of the United States Constitution by publishing nude videos and photographs of Plaintiff JANE DOE.

17

109.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER published nude videos and photographs of Plaintiff JANE DOE because she was a female.

110.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Fourteenth Amendment of the United States Constitution by disseminating nude videos and photographs of Plaintiff JANE DOE.

111.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER disseminated nude videos and photographs of Plaintiff JANE DOE because she was a female.

112.    As a proximate cause of said Constitutional violation, the Plaintiff, JANE DOE, suffered and continues to suffer injury, including but not limited emotional distress, public embarrassment, and reputational harm.

**WHEREFORE** Plaintiff, JANE DOE, respectfully prays for judgement in her favor and against the Defendant JOSHUA T. SYLVESTER in an amount in excess of $75,000 that will fairly and adequately compensate the Plaintiff for compensatory injuries and damages sustained, for punitive damages, for attorney's fees, and for costs of suit.

**Count 4 – Common Law Privacy Violation**
**(Jane Doe v. Joshua T. Sylvester)**

113.    Plaintiff repeats, realleges, and incorporates paragraphs one (1) through eighty-six (86) with the same force and effect as though fully set forth herein.

114. On August 18, 2022 and at all times relevant, Plaintiff JANE DOE was afforded a right to privacy by the common law.

115. On August 18, 2022 and at all times relevant, a reasonable person would be deeply offended by the publicity of their own nude videos and photographs.

116. On August 18, 2022 and at all times relevant, the public had no legitimate interest in nude videos and photographs of Plaintiff JANE DOE.

117. On August 18, 2022 and at all times relevant, there existed a statute in the State of Illinois 5 ILCS 140, titled "Freedom of Information Act."

118. On August 18, 2022 and at all times relevant, 5 ILCS 140/7(1)(c) creates an exemption to the disclosure of "personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

119. On August 18, 2022 and at all times relevant, there existed a statute in the State of Illinois 720 ILCS 5/11-23.5, titled "Non-consensual Dissemination of Private Sexual Images."

120. On August 18, 2022 and at all times relevant, Plaintiff JANE DOE was above the age of 18.

121. On August 18, 2022 and at all times relevant, Plaintiff JANE DOE was identifiable in the video and photographs.

122. On August 18, 2022 and at all times relevant, Plaintiff JANE DOE had intimate parts exposed in whole and in part in the video and images.

19

123. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER obtained the image under circumstances in which a reasonable person would know or understand that the videos and images were to remain private.

124. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER knew or should have known that the Plaintiff JANE DOE had not consented to the dissemination of the videos and images.

125. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated Plaintiff's common law right to privacy by capturing and retaining nude videos and photographs of Plaintiff JANE DOE on his personal cellular device.

126. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated Plaintiff's common law right to privacy by publishing nude videos and photographs of Plaintiff JANE DOE.

127. On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER violated the Plaintiff's common law right to privacy by disseminating of nude videos and photographs of Plaintiff JANE DOE.

128. As a proximate cause of said violation of Plaintiff's common law right to privacy, the Plaintiff, JANE DOE, suffered and continues to suffer injury, including but not limited emotional distress, public embarrassment, and reputational harm.

**WHEREFORE** Plaintiff, JANE DOE, respectfully prays for judgement in her favor and against the Defendant JOSHUA T. SYLVESTER in an amount in excess

of $75,000 that will fairly and adequately compensate the Plaintiff for compensatory injuries and damages sustained, for punitive damages, for attorney's fees, and for costs of suit.

## Count 5 – Intentional Inflection of Emotional Distress (IIED)
### (Jane Doe v. Joshua T. Sylvester)

129.    Plaintiff repeats, realleges, and incorporates paragraphs one (1) through eighty-six (86) with the same force and effect as though fully set forth herein.

130.    the conduct was intended to cause emotional distress.

131.    the conduct was extreme and outrageous.

132.    the conduct caused the victim's emotional distress.

133.    the emotional distress was extreme and disabling.

134.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER's conduct was extreme and outrageous when he captured nude videos and photographs of Plaintiff JANE DOE on his personal cellular device.

135.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER's conduct was extreme and outrageous when he published nude videos and photographs of Plaintiff JANE DOE.

136.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER's conduct was extreme and outrageous when he disseminated nude videos and photographs of Plaintiff JANE DOE.

137.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER knew that there was a high probability that capturing nude videos

21

and photographs of Plaintiff JANE DOE on his personal cellular device would cause severe emotional distress.

138.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER knew that there was a high probability that publication of nude videos and photographs of Plaintiff JANE DOE would cause severe emotional distress.

139.    On August 18, 2022 and at all times relevant, Defendant JOSHUA T. SYLVESTER knew that there was a high probability that dissemination of nude videos and photographs of Plaintiff JANE DOE would cause severe emotional distress.

140.    Thereafter and upon learning of Defendant JOSHUA T. SYLVESTER's extreme and outrageous conduct, Plaintiff JANE DOE was in fact caused to suffer severe emotional distress.

141.    As a proximate cause of said extreme and outrageous conduct, the Plaintiff, JANE DOE, suffered and continues to suffer injury, including but not limited emotional distress, public embarrassment, and reputational harm.

**WHEREFORE** Plaintiff, JANE DOE, respectfully prays for judgement in her favor and against the Defendant JOSHUA T. SYLVESTER in an amount in excess of $75,000 that will fairly and adequately compensate the Plaintiff for compensatory injuries and damages sustained, for punitive damages, for attorney's fees, and for costs of suit.

## Count 6 – Battery
### (JANE DOE V. JOSHUA T. SYLVESTER)

142.    Plaintiff repeats, realleges, and incorporates paragraphs one (1) through eighty-six (86) with the same force and effect as though fully set forth herein.

143.    the unlawful use of force or violence upon another.

144.    the intentional direction of such force or violence at the person of another.

145.    the sustaining of bodily harm by the person against whom such force or violence is directed.

146.    As a proximate cause of said batter, the Plaintiff, JANE DOE, suffered and continues to suffer injury, including but not limited physical harm, emotional distress, public embarrassment, and reputational harm.

**WHEREFORE** Plaintiff, JANE DOE, respectfully prays for judgement in her favor and against the Defendant JOSHUA T. SYLVESTER in an amount in excess of $75,000 that will fairly and adequately compensate the Plaintiff for compensatory injuries and damages sustained, for punitive damages, for attorney's fees, and for costs of suit.

23

## Count 7 – *Monell* Claim (Municipal Liability)
### (JANE DOE V. CITY OF KENOSHA)

147.    Each and every paragraph of this Complaint is incorporated as if fully stated herein.

148.    The misconduct described in Counts 1-6 was undertaken under the policy and practice of the Defendant CITY OF KENOSHA in that:

(a) As a matter of both policy and practice, these Defendants encourages, and is thereby the moving force behind, the very type of misconduct at issue in Counts 1-6, including violation of Fourth Amendment privacy rights, cruel and unusual punishment, sexual discrimination, violation of common law privacy rights and intentional infliction of emotional distress, by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference.

(b) Specifically, Defendant CITY OF KENOSHA has failed, as a matter of policy and practice, to properly train, instruct, and supervise its employees on the right to privacy and other rights afforded the Citizens of the United States and of Illinois under the Fourth Amendment, the Eighth Amendment, the Fourteenth Amendment, and the common law.

(c) As a matter of both policy and practice, these Defendants facilitate the very type of misconduct at issue in Counts 1-6 by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading Defendants to believe their actions will never be meaningfully scrutinized. Accordingly, in that way, these Defendants directly encourage future use of due process violations, fourth amendment violations, use excessive force, continued failure to intervene, and engagement in conspiracy, such as those that Plaintiff complains of.

(d) Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, Defendants violate the constitutional rights of individuals in a manner similar to that alleged by Plaintiff in Counts 1-6 on a regular basis, yet these Defendants investigate officer misconduct and make findings of wrongdoing in a disproportionately small number of cases.

24

149.     As a result of these Defendants policies and practices, and the unjustified and unreasonable conduct of the Defendants, Plaintiff JANE DOE, suffered and will continue to suffer damages including but not limited to money damages, expenses, pain and suffering, loss of normal life, and severe emotional distress.

**WHEREFORE** Plaintiff, JANE DOE, respectfully prays for judgement in her favor and against the Defendant CITY OF KENOSHA in an amount in excess of $75,000 that will fairly and adequately compensate the Plaintiff for compensatory injuries and damages sustained, for punitive damages, for attorney's fees, and for costs of suit.

<u>Count 8 – *Respondeat Superior*</u>
(JANE DOE V. CITY OF KENOSHA)

150.     Each and every paragraph of this Complaint is incorporated as if fully stated herein.

151.     At all times relevant, Defendant JOSHUA T. SYLVESTER was actual agents, apparent agents, employees, and/or servants of Defendant CITY OF KENOSHA.

152.     At all times relevant, in committing the acts and omissions alleged in the preceding paragraphs, Defendant JOSHUA T. SYLVESTER acted within the scope of his agency, employment, and/or service of Defendant CITY OF KENOSHA.

**WHEREFORE** Plaintiff, JANE DOE, respectfully prays for judgement in her favor and against the Defendant CITY OF KENOSHA in an amount in excess of

25

$75,000 that will fairly and adequately compensate the Plaintiff for compensatory injuries and damages sustained, for punitive damages, for attorney's fees, and for costs of suit.

<u>**JURY DEMAND**</u>

Plaintiffs, JANE DOE, assert her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.


Respectfully submitted,

SAULTER LAW P.C.


By: <u>/s/ Keenan J. Saulter</u>
   KEENAN J. SAULTER
   18430 West Creek Drive
   Tinley Park, Illinois 60477
   Tel: (708) 573-0060
   Fax: (708) 573-0061
   E-Mail: kjs@saulterlaw.com
   IL ARDC No. 6273377


SANDBERG LAW OFFICE, P.C.


By: <u>/s/ Craig M. Sandberg</u>
   CRAIG M. SANDBERG
   1104 Somerset Avenue
   Deerfield, Illinois 60015
   Tel: (833) 726-3237
   Fax: (312) 466-1100
   E-Mail: craig@sandberglaw.com
   IL ARDC No. 6257836

27